Filed 10/2/20  P. v. Bonner CA3
Opinion on transfer from Supreme Court

NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Plumas)

----

| | |
|---|---|
| THE PEOPLE, | C085457 |
| Plaintiff and Respondent, | (Super. Ct. No. F17-00110) |
| v. | OPINION ON TRANSFER |
| BROOK THOMAS BONNER, | |
| Defendant and Appellant. | |

Defendant Brook Thomas Bonner challenges his burglary conviction (Pen. Code, § 459),[1] arguing the trial court erred in excluding testimony from his grandparents that they had previously seen him act paranoid and worry about nonexistent dangers. Defendant also argues the trial court erred in instructing the jury that the defense of mistake of fact requires that a defendant's belief in the mistaken fact be reasonable.

We originally affirmed the conviction.  Our Supreme Court granted review but deferred further action pending disposition in *People v. Frahs* (2020) 9 Cal.5th 618

---

[1]     Undesignated statutory references are to the Penal Code.

1

(*Frahs*). Following its decision in *Frahs*, the court transferred this matter back to us with directions to vacate our decision and reconsider the cause in light of *Frahs*. In *Frahs*, the court found section 1001.36 applies retroactively to defendants whose cases were not yet final when the Legislature enacted section 1001.36. (*Frahs*, at p. 640.) The court further concluded a defendant need only argue he suffers from a qualifying mental disorder to be entitled to a limited remand to allow the trial court to conduct a mental health diversion eligibility hearing. (*Ibid.*) As we are bound by our Supreme Court's decision in *Frahs*, we will conditionally reverse and grant a limited remand for the purposes of determining defendant's eligibility for mental health diversion under section 1001.36.

FACTUAL AND PROCEDURAL BACKGROUND

In February 2017, defendant broke into a corner store via a glass front door and took a few e-cigarettes, canisters of chewing tobacco, sunglasses, and coins. Defendant did not take the $500 in cash that, according to the store owner, was out in the open.

That same evening, defendant's mother called the police and expressed concern about defendant, who was in the same area as the store. Defendant's mother subsequently informed police that he was safe at a nearby apartment. The police found defendant at the apartment, and he appeared to be high on methamphetamine. At trial, a police officer testified that individuals using methamphetamine often become paranoid, schizophrenic, and have hallucinations.

Defendant told police that some people were after him and he had gone to the apartment to call someone. Defendant had heard a woman's muffled screams and saw two men drive by slowly in a white sedan, looking at him. He broke into the corner store to set off the alarm and obtain help. Defendant initially denied taking anything from the store but eventually told police that he had grabbed things to throw at the people chasing him. Police asked why defendant had not just called 911 from the pay phone next to the corner store, and defendant responded he was "rushing" and "didn't know what those guys had." Defendant said he was a "regular user" of methamphetamine but was not

2

under its influence at the time of the incident. An audio recording of defendant's interview by the police was played for the jury. Police searched the area but did not find a white car or a woman.

When police transported defendant to jail, they found white powder where defendant had been sitting that tested positive for methamphetamine. The powder had not been there at the start of the ride. Defendant's condition deteriorated and he eventually required medical care.

In July 2017, defendant was charged with second-degree commercial burglary (§ 459; count I), using and being under the influence of a controlled substance (Health & Saf. Code, § 11550, subd. (a); count II), and possession of a controlled substance (Health & Saf. Code, § 11377, subd. (a); count III). As to count I, it was further alleged defendant had three prior prison terms. (§ 667.5, subd. (b).) Prior to trial in July 2017, defendant pleaded no contest to the two controlled-substance offenses and admitted the prior prison terms.

At trial, defendant argued that he actually believed he was being chased and that this excused his acts. At the start of trial, defendant informed the trial court that his grandparents were prepared to testify. Although they were not percipient witnesses to the incident, they had previously seen defendant making delusional and paranoid statements. The People objected to the proposed testimony, arguing this was a discovery violation and irrelevant. The trial court agreed and excluded the testimony on both grounds, and also because defendant's grandparents were not medical professionals with the proper expertise to testify on the subject.

The trial court also instructed the jury regarding mistake-of-fact with a modified CALCRIM No. 3406: "The defendant is not guilty of second degree burglary if he did not have the intent, or mental state, required to commit the crime because he mistakenly believed a fact. If the defendant's conduct would have been lawful under the facts as he believed them to be, he did not commit second degree burglary. [¶] If you find that the

3

defendant believed that he was being chased by individuals who wished to harm him physically and he acted because of legal necessity, he did not have the specific intent or mental state required for second degree burglary.  [¶]  If you have a reasonable doubt about whether the defendant had the specific intent or mental state required for second degree burglary, you must find him not guilty of that crime."

The trial court also instructed the jury regarding legal necessity, pursuant to CALCRIM No. 3403:  "The defendant is not guilty of second degree burglary if he acted because of necessity.  In order to establish this defense, the defendant must prove that: [¶]  One:  He acted in an emergency to prevent a significant bodily harm or evil to himself or someone else; [¶] Two:  He had no adequate legal alternative; [¶] Three:  The defendant's acts did not create a greater danger than the one avoided; [¶] Four:  When the defendant acted, he actually believed that the act was necessary to prevent threat or harm or evil; [¶] Five:  A reasonable person would also have believed that the act was necessary under the circumstances; [¶] And six:  The defendant did not substantially contribute to the emergency.  [¶]  The defendant has the burden of proving this defense by a preponderance of the evidence.  This is a different standard of proof than proof beyond a reasonable doubt.  [¶]  To meet the burden of proof by a preponderance of the evidence, the defendant must prove that it is more likely than not that each of the six listed items is proved."

In July 2017, a jury found defendant guilty of count I.  In August 2017, the trial court sentenced defendant to county jail for an aggregate term of six years, as follows: three years for count I (§ 459) plus three years for the prior prison terms (§ 667.5, subd. (b)), and two concurrent one-year terms for counts II and III.

Defendant filed a timely appeal.

4

DISCUSSION

I

Defendant contends the trial court erroneously instructed the jury that, in order to exonerate him, his mistaken belief that he was being chased had to be reasonable. Defendant points to the following portion of the mistake of fact instruction: "If you find that the defendant believed that he was being chased by individuals who wished to harm him physically, and *he acted because of legal necessity*, he did not have the specific intent or mental state required for second degree burglary." (Italics added.) Per CALCRIM No. 3403, the jury was also instructed that defendant had the burden of proving that "A *reasonable person* would also have believed that the act was necessary under the circumstances." (Italics added.) Citing *People v. Lawson* (2013) 215 Cal.App.4th 108, 114 (*Lawson*), defendant argues that burglary is a specific-intent crime, which can be negated by an unreasonable belief. Defendant also points to the statutory basis for the mistake of fact defense, section 26, and argues it does not require a reasonable belief.

We review de novo whether a jury instruction correctly stated the law. (*People v. Posey* (2004) 32 Cal.4th 193, 218.) As explained in *Lawson*, "[t]he mistake-of-fact defense operates to negate the requisite criminal intent or mens rea element of the crime, but applies only in limited circumstances, specifically when the defendant holds a mistaken belief in a fact or set of circumstances which, if existent or true, would render the defendant's otherwise criminal conduct lawful." (*Lawson, supra*, 215 Cal.App.4th at p. 111.) For example, a defendant who finds a motorcycle next to a fenced area with trash bins inside would have a mistake of fact defense because he had an "actual and reasonable belief in a set of circumstances—that the motorcycle had been abandoned— which, if true, would have shown he did not knowingly possess a stolen motorcycle." (*Id.* at p. 115.) By contrast, a defendant is not entitled to a mistake of fact defense if he walks out of a store and forgets he has a hoodie on his shoulder that he has not paid for.

5

(*Id.* at pp. 115-116.) In such circumstances, it would not be lawful for the defendant to walk out of the store with the hoodie. (*Ibid.*)

Similarly here, only if defendant's actions were a legal necessity or due to duress would it have been lawful for him to enter the store with the intent to deprive its owner of items that he would use to throw at someone. As our Supreme Court has explained with respect to robbery, "the unreasonable belief that a defendant is acting under duress will not negate the requisite specific intent; that intent is to deprive the owner of the property taken." (*People v. Bacigalupo* (1991) 1 Cal.4th 103, 126, judgement vacated and remanded on other grounds *sub nom. Bacigalupo v. California* (1992) 506 U.S. 802 [121 L.Ed.2d 5].) Courts have held the same rule applies to burglary. (*People v. Kearns* (1997) 55 Cal.App.4th 1128, 1136 [finding contrary to law the defendant's proposed instruction that "[t]he defendant's honest belief, even if mistakenly or unreasonably held, that her life would be in immediate danger if she did not engage in the conduct charged negates the criminal intent necessary to convict her of the crimes of robbery and burglary"].) We find no error in the instructions.

II

Defendant contends the trial court erred in excluding the testimony from his grandparents, which he argues was relevant to prove that he believed he was in danger on the night in question and therefore lacked the requisite intent to commit the crime. Citing *People v. Superior Court (Mitchell)* (2010) 184 Cal.App.4th 451, 453-454, 459, defendant also argues the trial court erroneously failed to first exhaust other discovery sanctions. (§ 1054.5, subd. (c).) In addition, defendant argues, excluding the testimony violated his constitutional right to present a defense. The People contend there was no error because the proposed testimony was irrelevant as a matter of law.

In California, only relevant evidence is admissible. (Evid. Code, § 350.) Relevant evidence is that "having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (*Id.,* § 210.) We review a trial

6

court's evidentiary rulings for abuse of discretion. (*People v. Venegas* (1998) 18 Cal.4th 47, 93.) A trial court has no discretion to admit irrelevant evidence. (*People v. Carter* (2005) 36 Cal.4th 1114, 1166-1167.) Given that defendant's grandparents were not percipient witnesses and could not testify regarding defendant's demeanor the evening of the incident, the relevance of their proposed testimony is, at best, minimal, and the trial court did not abuse its discretion in excluding it.

Even if the trial court erred in excluding the testimony of defendant's grandparents, defendant was not prejudiced under either the *Chapman* or *Watson* standards. (*Chapman v. California* (1967) 386 U.S. 18 [17 L.Ed.2d 705]; *People v. Watson* (1956) 46 Cal.2d 818, 836.) The jury heard the police officer's testimony that, the night of the event, defendant said that men were "after him," that he broke the store window to set off the alarm to alert the police, and that he took items to throw at the people who were chasing him. An audio recording of the police interview with defendant just after the incident was played for the jury, giving the jury ample opportunity to assess defendant's sincerity in his belief. Moreover, a responding police officer testified at trial that defendant appeared to be "scared" and "paranoid." Defendant also appeared to be under the influence of methamphetamine, and a police officer testified at trial that individuals using methamphetamine often become paranoid, schizophrenic, and have hallucinations. However, as previously discussed, defendant's genuine belief that it was necessary to break into the store to retrieve items to throw at the men would only negate his larcenous intent if it was also reasonable. (*People v. Bacigalupo, supra*, 1 Cal.4th at p. 126; *People v. Kearns, supra*, 55 Cal.App.4th at p. 1136.) Given that the proposed testimony did not address this disputed fact, any error was harmless.

### III

On transfer from the Supreme Court, defendant and the Attorney General agree we should conditionally reverse his convictions and sentence, and remand the matter for the

trial court to conduct a mental health diversion eligibility hearing under section 1001.36. We agree.

Section 1001.36 was enacted after defendant's sentencing (Stats. 2018, ch. 34, § 24, eff. June 27, 2018) and provides pretrial diversion may be granted if the trial court finds all of the following criteria are met: (1) the defendant suffers from a recently diagnosed mental disorder enumerated in the statute; (2) the disorder was a significant factor in the commission of the charged offense, and that offense is not one of the offenses enumerated in subdivision (b); (3) "[i]n the opinion of a qualified mental health expert, the defendant's symptoms of the mental disorder motivating the criminal behavior would respond to mental health treatment"; (4) the defendant consents to diversion and waives his right to a speedy trial; (5) the defendant agrees to comply with treatment as a condition of diversion; and (6) the defendant will not pose an unreasonable risk of danger to public safety, as defined in section 1170.18, if treated in the community. (§ 1001.36, subd. (b)(1)-(2).) If the treatment under pretrial diversion is deemed successful, the charges shall be dismissed and the defendant's criminal record expunged. (§ 1001.36, subds. (b)(1)(A)-(C), (c)(3), (e).)

The statute further provides: "At any stage of the proceedings, the court may require the defendant to make a prima facie showing that the defendant will meet the minimum requirements of eligibility for diversion and that the defendant and the offense are suitable for diversion. The hearing on the prima facie showing shall be informal and may proceed on offers of proof, reliable hearsay, and argument of counsel. If a prima facie showing is not made, the court may summarily deny the request for diversion or grant any other relief as may be deemed appropriate." (§ 1001.36, subd. (b)(3).)

In *Frahs*, our Supreme Court concluded *Estrada*'s inference of retroactivity applies to section 1001.36 such that defendants with qualifying mental disorders whose cases are not yet final are entitled to limited remand for the trial court to determine whether they are eligible for mental health diversion. (*Frahs, supra*, 9 Cal.5th at pp. 624-

8

625; see also *In re Estrada* (1965) 63 Cal.2d 740.) The "possibility of being granted mental health diversion rather than being tried and sentenced 'can result in dramatically different and more lenient treatment.' [Citation.]" (*Frahs,* at p. 631.) The court therefore concluded "the ameliorative nature of the diversion program places it squarely within the spirit of the *Estrada* rule," and thus the program retroactively applies to defendants whose cases are not yet final. (*Frahs,* at p. 631.) That is the case for defendant here.

The *Frahs* court further rejected the People's argument the defendant there was not entitled to remand because he did not make an adequate showing of eligibility. (*Frahs, supra*, 9 Cal.5th at pp. 637-638.) The People argued the defendant had to demonstrate he met all six threshold eligibility requirements before the appellate court could remand. (*Ibid.*) The court found imposing such a high bar for remand "would be unduly onerous and impractical" and "inconsistent with any sensible retroactive application of the statute." (*Id.* at p. 638.) Instead, the court concluded "a conditional limited remand for the trial court to conduct a mental health diversion eligibility hearing is warranted when, as here, the record affirmatively discloses that the defendant appears to meet at least the first threshold eligibility requirement for mental health diversion—the defendant suffers from a qualifying mental disorder. [Citation.]" (*Id.* at p. 640.)

As the parties correctly point out, there is evidence that defendant suffers from a qualifying mental disorder. At the beginning of the trial, defense counsel informed the trial court that defendant's grandparents were prepared to testify that they had seen him making delusional and paranoid statements, including statements about being chased. The court disallowed their testimony because they were not percipient witnesses and lacked the expertise to testify to what defendant would do when stressed. The defense statement of mitigating circumstances asserted that at the time of trial, defendant believed it was a matter of right for him to commit the acts for which he was convicted. It claimed defendant suffered "from paranoia in that from time to time he believes that either he is

being pursued or is in danger of individuals who generally do not exist." In support of this claim, there was an attached letter from a friend of defendant attesting to his paranoia. The probation report likewise found there was some indication defendant suffered from a mental illness as outlined in the mitigation statement.

This evidence suffices under *Frahs* for a conditional limited remand.

DISPOSITION

We conditionally reverse the judgment and remand to the trial court for an eligibility determination under section 1001.36. " 'If the trial court finds that [defendant] suffers from a mental disorder, does not pose an unreasonable risk of danger to public safety, and otherwise meets the six statutory criteria (as nearly as possible given the postconviction procedural posture of this case), then the court may grant diversion. If [defendant] successfully completes diversion, then the court shall dismiss the charges. However, if the court determines that [defendant] does not meet the criteria under section 1001.36, or if [defendant] does not successfully complete diversion, then his convictions and sentence shall be reinstated.' [Citation.]" (*Frahs, supra*, 9 Cal.5th at p. 641.)

                                                                                 _____/s/_____

                                                                                 BLEASE, J.

We concur:

_____/s/_____
RAYE, P. J.

_____/s/_____
HOCH, J.

10